**In re APF INDUSTRIES, INC., Debtor.**

**Bankruptcy No. 90–615–8P1.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

March 9, 1990.

David Steen, Tampa, Fla., for debtor.

John Yanchunis, St. Petersburg, Fla., for movant.

## ORDER ON MOTION FOR RELIEF FROM STAY

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 case and the matter under consideration is a Motion filed by Florida Federal Savings Bank (Florida Federal) who seeks relief from the automatic stay in order to enforce its claimed interest against certain properties of APF Industries, Inc. (Debtor). Florida Federal seeks relief under Section 362(d)(1) of the Bankruptcy Code by alleging that it lacks adequate protection.

In due course the Debtor filed its response in which it contended that Florida Federal is not entitled to any adequate protection because its protectable interest is limited to the real estate owned by the Debtor, the property encumbered by a properly recorded mortgage, but has no protectable interest in any other collateral it claims because, according to the Debtor, Florida Federal failed to perfect its interest pursuant to Fla.Stat. § 679.9–301 in the other collateral it claims.

At the final evidentiary hearing, the Court heard arguments of counsel for the

respective parties, considered the record and now finds and concludes as follows:

The obligation owed by the Debtor to Florida Federal is evidenced by three promissory notes. The first, executed on September 14, 1989, was in the original principal sum of $720,000. The current outstanding balance on the note is $598,560 principal and $26,469.88 accrued interest. The interest on this obligation accrues at the daily rate of $188.59. The second note was executed by the Debtor on the same date in the original principal sum of $227,000. The current outstanding balance on the note is $223,216.67 principal and $10,129.19 accrued interest. The interest on this obligation accrues at the daily rate of $71.31. The third note was again executed on the same date in the original principal amount of $150,000. The current principal balance on this note is $75,000, together with accrued interest of $3,329.12. The interest on this obligation accrues at the daily rate of $23.96.

It is without dispute that the Debtor is in default on all these obligations (Affidavit of Jack L. Ratcliffe). The Debtor concedes, as it must, that the real estate mortgage granted to Florida Federal is a first mortgage representing a valid, enforceable lien against the real property described in the note and mortgage. The Debtor contends, however, that Florida Federal did not acquire an enforceable valid security interest in any of the personal properties owned by the Debtor for the following reasons:

The Security Agreement executed by the Debtor in conjunction with the execution of the Notes described above is a two page document and purports to grant a security interest in every conceivable personal property ever invented or manufactured in the United States or, as far as it goes, in the entire world (Exhibit B). The document leaves no doubt that the form used was designed to be used in conjunction with loans primarily related to large construction projects. There is hardly any doubt that the Debtor intended to grant a security interest to Florida Federal in everything which is described in Exhibit B of the security agreement. The difficulty arises from the fact, however, and this is the crux of the Debtor's contention, that the Financing Statement (UCC–1) filed on record described the collateral in which the Debtor granted a security interest as follows:

All items of personal property set forth in Exhibit "B" attached hereto which *affect the real property located in Pinellas County, Florida described in Exhibit "A" attached hereto, as encumbered by that certain Mortgage executed by Debtor, in favor of Secured Party, dated September 14, 1989* and Security Agreement executed by Debtor in favor of Secured Party dated September 14, 1989. (emphasis supplied)

To overcome the obvious, Florida Federal urges first that the description on the Financing Statement is sufficient to alert the reader of the existence of its security interest and if the reader resorts to reading the documents referred to in the Financing Statement (Exhibit # 1) would be able to determine the full extent of the security interest of Florida Federal.

In addition, it is contended by Florida Federal that the reference to the Security Agreement in the Financing Statement is by itself sufficient to give notice as to the extent of the security interest it claims. Therefore, its security interest was properly perfected and, this being the case, it is entitled to adequate protection of its interest and if the Debtor fails to furnish the same, is entitled to obtain relief from the automatic stay.

In support of its position, Florida Federal cites numerous authorities to the effect that the description of the collateral is sufficient even though it indicates only a general description of the items subject to the security interest. Particularly, Florida Federal relies on the case of *In re Stegman*, 15 U.C.C.R.S. 225 (F.S.D.Fla.1974) where the District Court for the Southern District held that the secured party's failure to attach a Schedule A to the Financing Statement which made a reference to Schedule A and it simply described the collateral as equipment was sufficient to comply with the requirement of Fla.Stat.

§ 679.9–110. The holding of *Stegman* does correctly represent the law and the interpretation of § 679.9–110 which provides that the description of the collateral is sufficient whether or not it is specific if it reasonably *identifies* what is described. However, neither *Stegman* nor the other cases cited by Florida Federal deals with the problem involved in the present instance. In the matter under consideration, the Financing Statement does identify the property which referred to a document which is attached. The Financing Statement contains clear limiting language specifically stating that the personal property described as the collateral is limited to personal property which "affects the real property" located in Pinellas County, Florida described in Exhibit "A". The searcher of the record cannot help at first blush to conclude that the interest granted was to secure a construction loan, and the collateral was limited to personal properties which affect the real property mortgaged. This conclusion is smply supported by the type of collateral described on page one of Exhibit "B".

Florida Federal urges, however, that the description in the UCC–1 was sufficient to alert and give notice which in turn should prompt additional search by anyone and the reference in the description of the collateral to the Security Agreement would effectively inform the searcher of the record of its interest in the collateral described on the second page of Exhibit "B".

In support of its position, the Debtor relies on the case of *Matter of H.L. Bennett Co.*, 588 F.2d 389 (1978) in which the Court of Appeals for the Third Circuit held that a Financing Statement describing the collateral as "all assets as contained in the Security Agreement (installment note) executed even date herewith" failed to comply with the applicable statute of the State of Pennsylvania, the statute which deals with perfection of security interests under the Uniform Commercial Code in the State of Pennsylvania. While this case involved the interpretation of UCC as adopted by the State of Pennsylvania, there is no radical difference between the provisions of Fla.

Stat. § 679.102 and the Pennsylvania statute, 12A P.S.Pa. § 9–402(1).

The Debtor's reliance on *H.L. Bennett Co.* is misplaced and this Court is satisfied that it furnishes scant, if any, support for the proposition urged by the Debtor. Unlike in *Bennett*, in the present instance the financing statement not only made a reference to the security agreement but the recordation of the UCC–1 included a copy of the Security Agreement which described and identified not only what was in fact intended to stand as collateral for the obligation owed, but the collateral also which was never really involved in this transaction at all. Thus, even if one considers the limiting language in the financing statement, which apparently limited the collateral to personal property which affects the real property, the additional reference to the Security Agreement clearly furnished sufficient notice to the reader of the extent of the security interest granted to the Bank. This being the case, the Debtor's attack on the validity of the security interest claimed by Florida Federal must fail and the security interest of Florida Federal is not limited to the real estate but also includes all other assets described on page two of Exhibit B. Accordingly, this Court is satisfied that the Bank is entitled to consideration of its request for adequate protection or, in the alternative, consideration of its Motion for Relief from Stay.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that a preliminary hearing be, and the same is hereby, scheduled before the undersigned on the 21 day of March, 1990 at 3:00 p.m. to consider the relief sought by Florida Federal, including to what extent it is entitled to adequate protection.

DONE AND ORDERED.